**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| MATTRESS FIRM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. _____ |
| v. | § | |
| | § | (JURY TRIAL DEMANDED) |
| FOSBROOKE, INC., D/B/A TUFT & NEEDLE | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MATTRESS FIRM'S COMPLAINT AND**
**APPLICATION FOR PERMANENT INJUNCTION**

Mattress Firm, Inc. ("Mattress Firm") brings this action complaining of the false, unfair, dilutive, and disparaging advertising practices of Fosbrooke, Inc., d/b/a Tuft & Needle ("Tuft & Needle").

**PRELIMINARY STATEMENT**

1.      This is a case of false, unfair, and disparaging advertising perpetuated by Tuft & Needle, a relative newcomer in the online mattress industry.  When entering this highly competitive industry, Tuft & Needle chose to get a leg up—not by fair competition—but by orchestrating a multi-state smear campaign against "greedy" mattress stores.  In doing so, Tuft & Needle focused its sights on the industry's biggest player, accusing Mattress Firm of perpetuating a "scam" on consumers based on "gimmicky" marketing, "unfair" markups, "death spiral" return policies, and "snake oil."

2.      Tuft & Needle claims to manufacture and price its products "honestly," but its advertising is anything but honest.  In fact, its entire business model is premised on a pervasive, nationwide blitz of billboards, commercials, and online advertisements containing lies, speculation, and conjecture about "Big Mattress," and specifically Mattress Firm.  Mattress Firm

believes in and indeed welcomes competition, but not at the expense of honesty and integrity in advertising.  Tuft & Needle's smear campaign, directed squarely at Mattress Firm, crosses the line, and it must be held accountable for its unlawful acts.

3.       Because of the wrongful conduct described herein, Mattress Firm has suffered damages, is being irreparably harmed, and is now being forced to file this lawsuit against Tuft & Needle for its willful acts of unfair competition under 15 U.S.C. § 1125(a); trademark dilution by blurring and tarnishment under 15 U.S.C. § 1125(c); trademark dilution and injury to business reputation under Section 16.103 of the Texas Business and Commerce Code; defamation; business disparagement; and unfair competition under Texas common law.

## PARTIES

4.       Mattress Firm, Inc. is a Delaware corporation with its principal place of business in Houston, Texas.

5.       Fosbrooke, Inc., d/b/a Tuft & Needle, is a Delaware corporation with its principal place of business in Phoenix, Arizona.  Tuft & Needle may be served through its registered agent CT Corporation System, at 3800 N. Central Ave. Suite 460, Phoenix, AZ 85012, or wherever it may be found.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over the subject matter of this action under section 39 of the Lanham Act (15 U.S.C. § 1121) and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over Mattress Firm's related state law claims under 28 U.S.C. §§ 1338 and 1367.

7.       This Court has personal jurisdiction over Tuft & Needle because (a) Tuft & Needle's products are available for purchase in the State of Texas and this judicial district; (b) Tuft & Needle has committed tortious acts in the State of Texas and this judicial district, and because

Mattress Firm's claims arise out of those acts; and (c) Tuft & Needle regularly conducts business in the state of Texas and this judicial district.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**A.      Mattress Firm Is the Largest Mattress Retailer in the United States**

9.      Historically, consumers in the market for a new mattress shopped for the product at retail furniture stores.  In 1993, for example, 67% of mattresses sold in the United States were sold by furniture or department stores.  Specialty mattress and bedding retailers had a relatively small piece of the market, selling only 19% of the country's mattresses at that time.  As the industry evolved, however, sales migrated from furniture retailers and department stores to specialty mattress retailers, who were better equipped to educate consumers regarding the ever-differentiated products being made available.  By 2014, the largest percentage of mattresses sold in America were sold by specialty mattress retailers.

10.      Mattress Firm was founded in 1986 as a single retail store located in Houston, Texas.  By 2001, Mattress Firm had become one of the largest mattress retailers in the country, owning 7.7% of the industry's market share.  By comparison, the largest mattress retailer at that time, Select Comfort, owned an 8.5% market share.  Through a combination of organic growth and strategic acquisitions, Mattress Firm grew even larger after 2001, and eventually became the country's leading specialty mattress retailer.

11.      With more than 3,500 company-operated and franchisee-owned mattress specialty stores across 49 states, Mattress Firm has the largest geographic footprint in the United States among multi-brand mattress retailers.  Moreover, Mattress Firm's market share among specialty bedding retailers is over 25%, while Sleep Number, the next largest retailer, has only a 7.8%

market share.  There is no question that Mattress Firm is far and away the biggest mattress retailer in the country.

12.     Through its brands including Mattress Firm, Sleepy's, Sleep Train, and others, Mattress Firm carries an extensive assortment of traditional and specialty mattresses and bedding-related products across a wide range of price points from nationally known brands like Serta, Simmons, and Hampton & Rhodes.

**B.     Mattress Firm's Distinctive and Famous MATTRESS FIRM® Trademark**

13.     Mattress Firm owns the registered trademark MATTRESS FIRM®, which has become one of the most widely recognized, inherently distinctive, and famous marks in the United States.  Depictions of two of Mattress Firm's famous marks as they appear in Mattress Firm's advertising are depicted below:





14.     Mattress Firm is the owner of many federal trademark registrations for the MATTRESS FIRM® trademark, including the following:

| Mark | First Use | Reg. No. | Reg. Date | Description of Mark |
|------|-----------|----------|-----------|---------------------|
| LUXLIVING ONLY AT MATTRESS FIRM | Sept. 2012 | 5281734 | July 7, 2015 | Color is not claimed as a feature of the mark. The words "ONLY AT MATTRESS FIRM" appear below "LUXLIVING" with a curved line underneath the word "FIRM." |
| LUXLIVING ONLY AT MATTRESS FIRM | Sept. 2012 | 5029877 | Aug. 30, 2016 | Color is not claimed as a feature of the mark.  The words "ONLY AT MATTRESS FIRM" appear below "LUXLIVING" with a curved line underneath the word "FIRM." |
| MATTRESS FIRM | May 2009 | 3799445 | June 8, 2010 | The color(s) red, yellow and black is/are claimed as a feature of the mark. The mark consists of "MATTRESS FIRM" in red and a yellow and black swoosh design underneath "FIRM." |
| MATTRESS FIRM | Oct. 4, 2009 | 3941031 | Apr. 5, 2011 | The color(s) red, yellow and black is/are claimed as a feature of the mark. The mark consists of "MATTRESS FIRM" in red and a yellow and black swoosh design underneath "FIRM". |
| MATTRESSFIRM SUPERCENTER | 2004 | 3323167 | Oct. 30, 2007 | Color is not claimed as a feature of the mark. The mark consists of MATTRESSFIRM SUPERCENTER with swoosh design under FIRM. |
| MATTRESSFIRM CLEARANCE CENTER | Aug. 2003 | 3412394 | Apr. 15, 2008 | Color is not claimed as a feature of the mark. The mark consists of the words "MATTRESSFIRM CLEARANCE CENTER" with swoosh design under the word "FIRM" |
| MATTRESS FIRM | June 2003 | 3323162 | Oct. 30, 2007 | Color is not claimed as a feature of the mark. The mark consists of MATTRESS FIRM with a swoosh design underneath FIRM. |

15.     Each of these marks is valid and subsisting.

16.     In addition to its extensive rights based on its MATTRESS FIRM® trademark registrations, Mattress Firm has extensive federal and state common law rights in the MATTRESS FIRM® trademarks based on Mattress Firm's extensive advertising, promotion, and sales using these trademarks.

17.     Mattress Firm has spent 30 years building its brand.  It has extensively advertised and promoted its mark and its products in various media throughout the United States. The mark is used on the storefronts of all 3,500 of its stores.  It is prominently placed on all of Mattress Firm's messaging, which in 2017 alone, cost Mattress Firm over $300 million to support.

18.     The mark is used throughout the country in its advertising, and is seen in numerous stadiums, arenas, and other venues across the country.  The logo is used in conjunction with partnerships with the Houston Texans, Houston Rockets, Atlanta Falcons, Sacramento Kings, and Live Nation in San Diego.  It appears in both national and local television advertising, in print pieces distributed to over 400 newspapers nationwide, and in digital media like YouTube and Pandora.

### C.    The Emerging Bed-in-a-Box Industry

19.     Beginning around 2006, a new product emerged in the mattress and bedding sector called a bed-in-a-box.  Appropriately named, a bed-in-a-box is a mattress that is compressed and vacuum-sealed in a box the fraction of the size of a traditional mattress.  Once unwrapped, these mattresses expand to their normal size.  Rather than purchasing mattresses from retail outlets and having those mattresses delivered on a truck to consumers' homes, a bed-in-a-box allows consumers to order a mattresses online and have them delivered to their homes via courier.

20.     The bed-in-a-box space has become increasingly crowded, with over 100 bed-in-a-box companies operating in the United States today.  From 2015 to the present, Mattress Firm

itself sold bed-in-a-box products under the "Dream Bed" brand name.  A Dream Bed queen-sized mattress currently retails for $500 to $600.[1]

### D.      Tuft & Needle Enters the Bed-in-a-Box Sector

21.     Tuft & Needle was incorporated in 2014 as an online "bed-in-a-box" company. Tuft & Needle boasts its ability to provide premium mattresses, honest prices, and exceptional customer service.  Tuft & Needle is now believed to be the second-largest online bed-in-a-box company in the country.

22.     But to obtain consumer support for their start-up company and drive traffic to their website, Tuft & Needle elected to engage in an increasingly repeated pattern of deceit towards consumers.  Tuft & Needle, while purporting to provide "The Truth" about the mattress industry, capitalized on Mattress Firm's brand to perpetuate an advertising smear campaign comprised of misrepresentations about "Big Mattress" and specifically Mattress Firm.

23.     As a participant in the bed-in-a-box sector, Mattress Firm welcomes fair competition and believes in the consumer's right to product information and transparency.  Tuft & Needle is free to provide honest product comparisons, conduct fair comparative advertisements, and highlight its strengths in product offerings and service.  It cannot do what it has done here, however, which is bait customers using the Mattress Firm name and imagery, and then provide false and misleading information in the guise of honesty and transparency.

24.     The misrepresentations disseminated by Tuft & Needle include false statements concerning the quality of its products; false statements concerning the pricing of its products; false statements concerning the quality of its competitors' (including Mattress Firm's) products; false statements concerning the pricing of its competitors' (including Mattress Firm's) products; false

---

[1] Mattress Firm will soon launch additional bed-in-a-box product offerings under the Sleepy's and Tulo brand names, which will be priced similarly to the Dream Bed products.

statements concerning the honesty of mattress retailers (including Mattress Firm); and false statements concerning a purported "scam" being effectuated on consumers by mattress retailers (including Mattress Firm).

**E.    Tuft & Needle Targets Mattress Firm**

25.    Tuft & Needle is well aware of the strength and fame of Mattress Firm's brand and marks, which Mattress Firm has established and built over the last 30 years.  Thus, Tuft & Needle began purchasing dozens of Google "AdWords" incorporating the name "Mattress Firm" to drive traffic to its own website beginning in 2015.  Below is a sampling of various AdWords that Tuft & Needle has acquired at various times since 2015:



26.    When consumers run searches on Google using these phrases, they encounter "Mattress Stores are Greedy" or "Learn the Truth" advertisements that direct them not to Mattress Firm's website, but to Tuft & Needle's instead. For example, in 2016, a consumer searching for "Mattress Firm Houston" likely encountered this:



27.     After the potential Mattress Firm customer clicks on Tuft & Needle's incendiary advertising link, they are taken to Tuft & Needle's website, which is replete with false and disparaging statements about Mattress Firm and its services and products.   Tuft & Needle represents that unlike its "greedy" competitors, Tuft & Needle offers the consumer "honestly crafted" mattresses offered at a "fair price" without the "sales tricks and gimmicks."   Tuft & Needle further includes false price comparisons designed to deceive consumers into believing that Tuft & Needle offers consumers a premium mattress at a sharply discounted price.

28.     Mattress Firm does not allege that buying AdWords by itself is unlawful.  But what is unlawful is the use of AdWords to intentionally provide misleading or false information to consumers who are looking for Mattress Firm products or services.  The comparative intelligence data available to Mattress Firm indicates that Tuft & Needle's unlawful advertisements have received over 3,000 clicks per month.  Further, Tuft & Needle credits its Google marketing

campaigns for its success, reporting that its sales increased 150% year over year thanks to this deceptive scheme.[2]

29.    Moreover, Tuft & Needle's advertising uses pseudonyms like "Big Mattress" and "Goliath" to describe Mattress Firm.  For example, one of its billboard advertisements depicts Mattress Firm as a Goliath about to be struck down by David:



30.    The pseudonym is hardly subtle.  Tuft & Needle has become increasingly bold in its campaign to smear Mattress Firm's mark and brand.  Indeed, it uses the same color scheme, font, and layout as Mattress Firm's famous mark:



31.    Other Tuft & Needle billboards also pirate Mattress Firm's lettering and color scheme to accuse Mattress Firm of employing "gimmicks" and to direct consumers to its "Learn the Truth" webpage.

---

[2] See "Tuft & Needle Credits Google for a 150% Sales Increase," DigitalCommerce360, available at https://www.digitalcommerce360.com/2016/11/01/tuft-needle-credits-google-150-sales-increase/ (last accessed October 16, 2017).



**F.**  **Tuft & Needle's Specific False Advertising**

32.  Having used Mattress Firm's name, imagery, and brand to lure consumers in, Tuft & Needle's website and other advertisements then purport to inform consumers that Mattress Firm engages in dishonest and wrongful pricing practices.  These materials and advertisements contain specific and measurable false statements of fact regarding its pricing and the pricing in the mattress industry.   Tuft & Needle further disseminated the same false information in the investment community, thus expanding the scope of damage to Mattress Firm's brand and business.

33.  Tuft & Needle made these statements deliberately, intentionally, and/or with reckless disregard for the truth and acted with malice in making these statements.

**a.**  **The "Unfair Markups" Advertisement**

34.  Tuft & Needle has accused Mattress Firm of unfairly marking up the prices of its mattresses by selling "snake oil."  Specifically, in online advertisements that ran in 2015 and 2016, Tuft & Needle claimed that Mattress Firm marked up the price of its products "6-12 times" through "gimmicky marketing, unfair retail markups, sales commissions, and snake oil":



35.     This advertisement is false and misleading.

36.     Consumers who rely on Tuft & Needle's advertisement will believe that Mattress Firm typically marks up the price of its mattresses 12 times greater than the "true cost" of the mattress, whereas Tuft & Needle marks up the cost of its products only once.  That statement is false.[3]  Moreover, alleging that Mattress Firm sells its consumers "snake oil" is not puffing or a meaningless superlative; it is a specific allegation of wrongful conduct.

        **b.**      **The "Cutting Costs" Advertisement**

37.     Tuft & Needle claims that it is able to "cut out the middlemen" to provide customers with a fair price, and represents that the final retail price of its mattress is $375.  The graphic below purports to compare its final retail price to Mattress Firm's final price of $1,000, after markups relating to various costs:

---

[3] Tuft & Needle's advertising continues to falsely claim that Mattress Firm marks up its products "6-12 times."

38.     Although this graphic refers to a "High End Retailer," it is used on Tuft & Needle's recent "Mattress Bet" website that is specifically directed at Mattress Firm.

39.     The comparison is false and misleading.  Consumers who rely on Tuft & Needle's advertising will believe that a comparable twin-sized mattress sold by Mattress Firm will cost over *2.5 times more* than Tuft & Needle's mattress, but that is false.  This graphic does not provide "honest" pricing information to its consumers, because an "honest" comparison would be Tuft & Needle's twin-sized bed-in-a-box mattress price ($375 according to the graphic) versus Mattress Firm's twin-sized bed-in-a-box mattress ($320–$420, a far cry from $1,000).   Further, only 1% of the twin-sized mattresses sold by Mattress Firm are priced at or above $1,000, and that is across all product lines, not just  bed-in-a-box.

40.     Commonly accepted industry data also proves that the comparison is false and misleading.  The International Sleep Products Association publishes quarterly data on business activity in the mattress industry.  The data is based on monthly mattress and foundation sales information reported by 13 U.S. manufacturers.  ISPA reported that the average unit price of all mattresses sold in the United States in 2016 was only $302.16:

- 13 -

| Shipments | Dollar Value Millions | | | Units Shipped Thousands | | | Average Unit Price AUP | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2015[r] | 2016 | % Chg | 2015[r] | 2016 | % Chg | 2015[r] | 2016 | % Chg |
| Mattresses | $6,775.4 | $7,076.7 | 4.4% | 22,483.0 | 23,420.5 | 4.2% | $301.36 | $302.16 | 0.3% |
| Foundations | $1,320.2 | $1,290.4 | -2.3% | 17,472.3 | 17,757.9 | 1.6% | $75.56 | $72.67 | -3.8% |
| Total Mattress & Foundation Shipments | $8,095.6 | $8,367.1 | 3.4% | 39,955.3 | 41,178.4 | 3.1% | $202.62 | $203.19 | 0.3% |

Source: ISPA Annual Sales Survey
r = 2015 data revised
* Includes contract and residential products. Excludes futons, crib mattresses, and dual-purpose mattress inserts.
  Non-Innerspring includes foam (all types), air, mattresses incorporated in hybrid-type flotation and electric adjustable ensembles.

41.     Further, the majority of **queen-sized mattresses** sold in 2016 were priced between $500 and $2,000.  Thus, Tuft & Needle's self-proclaimed truthful advertising deceives consumers regarding the actual price of comparable products by comparing the price of its twin-sized mattresses to the price of **an entirely different product**.

c.      **The "Truth in Pricing" Advertisement**

42.     Tuft & Needle's advertising purports to provide "complete transparency" to industry mattress pricing.  According to Tuft & Needle, the average material cost for a queen-sized mattress is $300, yet—after retail mark-ups, marketing, and commissions—the "typical retail price" skyrockets to $3,000:



43.     This statement is false and misleading.

44.     Consumers who rely on Tuft & Needle's advertising will believe that the average or typical mattress costs only $300 to make, but then sells for ten times that much ($3,000). Although Tuft & Needle claims that the $3,000 "typical retail price" is based on "industry averages for mattresses of comparable quality to the Tuft & Needle mattress," that statement is false under any metric.

45.     ISPA's 2016 report shows that only 5% of the queen-sized mattresses that sold in the United States in 2015 cost over $2,000. In 2016, the percentage of queen-sized mattresses that sold for over $2,000 rose to just over 7 percent:

| BY QUANTITY | | | | | |
|---|---|---|---|---|---|
| Share of Mattress Market by Retail Price Point[1] | | | | | |
| Retail Price Points | 2015 | Q1 2016 | Q2 2016 | Q3 2016 | Q4 2016 |
| Under $500 | 36.4% | 37.3% | 36.4% | 36.8% | 33.9% |
| $500 - $1,000 | 41.3% | 36.4% | 36.9% | 36.5% | 39.5% |
| $1,000 - $2,000 | 17.0% | 19.7% | 19.2% | 19.8% | 20.4% |
| $2000 and above | 5.2% | 6.6% | 7.5% | 6.9% | 6.2% |
| Total | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |
| Percent of total industry shipments | 66.0%[2] | | | | |

Source: Aggregate data provided by participants in ISPA's 2015 Mattress Industry Report of Sales and Trends and 2016 Bedding Market Quarterly
1 Represents percentage (by quantity) of bedding sets (that is, mattress and foundation) manufactured to be merchandised at specific retail price points, using queen sets as the price point benchmark. Since ISPA has not collected quarterly retail price point data until now, prior year quarterly comparisons are not available.
2 Compared to the unit and sales data published in Figure 1 of ISPA's 2015 Mattress Industry Report of Sales and Trends, companies providing 2015 price point data used in this report accounted for 66.0% of 2015 total mattress and stationary foundation units.

46.     The "typical retail price" as depicted in Tuft & Needle's advertising therefore is not "typical," and the related representations are false and misleading.

47.     KeyBanc Capital Markets has also published data about queen-sized mattress sales in the United States that disproves Tuft & Needle's representations to consumers. According to KeyBanc, the "typical price" for a queen-sized mattress in 2016 was nowhere near $3,000. In the bed-in-a-box space, which is the only sector that is comparable to the data Tuft & Needle presents about its own mattresses, the industry average price for a queen-sized bed in 2016 was $1,000. Three of Tuft & Needle's largest competitors—Casper, Leesa, and Mattress Firm's Dream Bed— each retailed for under $1,000. Indeed, the highest "typical price" on the list was $1,999, which

is substantially less than the unsubstantiated and blatantly false $3,000 price tag Tuft & Needle

recklessly slaps on Mattress Firm and its other competitors' products in its advertising:

| Company | # of Ratings | Avg. Rating | Typical Price (Queen) | Price Range |
|---|---|---|---|---|
| Casper | 7140 | 4.4 | $850 | $850 |
| Tuft & Needle | 6811 | 4.4 | $600 | $600 |
| Leesa | 6521 | 4.6 | $890 | $890 |
| Sleep Innovations | 3622 | 4.3 | $280 | $280-$525 |
| Nature's Sleep | 3162 | 4.8 | $1,300 | $1,300-$3,400 |
| Brentwood Home | 2770 | 4.4 | $795 | $795-$1,649 |
| Ghostbed | 1775 | 4.7 | $795 | $795 |
| Helix Sleep | 1688 | 4.7 | $900 | $900 |
| Brooklyn Bedding | 1646 | 4.7 | $750 | $750 |
| Eve | 1406 | 4.5 | $849 | $849 |
| Keetsa | 1310 | 4.9 | $1,679 | $681 - $2,099 |
| Lull | 1239 | 4.4 | $850 | $850 |
| Novosbed | 1127 | 4.8 | $1,099 | $1,099 |
| Purple Mattress | 993 | 4.6 | $1,099 | $1,099 |
| Saatva | 858 | 4.9 | $899 | $899 |
| Endy | 767 | 4.7 | $700 | $700 |
| Yogabed | 404 | 4.5 | $874 | $874 |
| Nest Bedding | 391 | 4.9 | $599 | $599-$3,199 |
| Bear Mattress | 374 | 4.8 | $850 | $850 |
| Cocoon Bed (by Sealy) | 192 | 4.6 | $699 | $699 - $849 |
| Bed In A Box | 181 | 4.3 | $849 | $849 - $1,899 |
| Plush Beds | 171 | 4.9 | $699 | $699-$2,299 |
| FIN | 143 | 4.9 | $799 | $799-$849 |
| eLuxury Supply | 123 | 4.8 | $625 | $625 |
| Aviya | 118 | 4.7 | $899 | $899 |
| Live and Sleep | 110 | 4.8 | $799 | $799 |
| Dromma | 72 | 4.9 | $849 | $849 |
| Zotto | 71 | 4.9 | $875 | $875 |
| Dream Bed (by MFRM) | 68 | 5.0 | $829 | $829 - $999 |
| Wright | 59 | 5.0 | $1,795 | $1,795 |
| WinkBed | 57 | 4.5 | $1,299 | $1,299 |
| HIBR | 37 | 4.9 | $875 | $875 |
| OSO (by Reverie) | 32 | 4.9 | $925 | $925 |
| Noomi | 29 | 4.9 | $875 | $875 |
| KISS | 8 | 4.6 | $795 | $795 |
| Sonno | 7 | 5.0 | $875 | $875 |
| Danican | 1 | 5.0 | $1,099 | $1,099 |
| 4Sleep | 0 | 5.0 | $899 | $899 |
| BioPosture | 0 | n/a | $1,995 | $1,995 - $2,495 |
| it bed (by Sleep Number) | n/a | n/a | $1,099 | $1,099 |
| Loom & Leaf (by Saatva) | n/a | n/a | $999 | $999 |
| Zenhaven (by Saatva) | n/a | n/a | $1,899 | $1,899 |
| Organica | 0 | n/a | $1,995 | $1,995 |
| Reverie | 0 | n/a | $1,999 | $1,999-$3,499 |

*Source: Company websites, Amazon.com, and KeyBanc Capital Markets Inc.*

48.     Tuft & Needle's "Truth in Pricing" graphic does not provide "complete

transparency" or truthful pricing information to its consumers, because a completely transparent

"typical retail price" is the price of Mattress Firm's queen-sized bed-in-a-box mattress ($500-600,

not $3,000).  Further, Mattress Firm's "typical retail price" across all of its queen-sized mattresses,

not just the bed-in-a-box line, is approximately $800.

49. Under any of these measures, Tuft & Needle's "Truth in Pricing" advertisement is pure fiction and provably false.

### d. The "Scam" Advertisement

50. Tuft & Needle's online advertising accuses Mattress Firm of perpetuating a "scam" on consumers by selling multi-layer mattresses:



51. This statement is false and misleading.

52. Consumers who rely on Tuft & Needle's advertising will believe that adding multiple layers to mattresses is a scam designed to increase the price of the mattress with no corresponding benefit. Mattress manufacturers, however, use multiple layers to create nuanced, different feels. Those different feels provide consumers with choices when they purchase mattresses. For example, mattresses are usually comprised of a base layer of foam between 4 and 6 inches in thickness. The base layer foam is typically hard and provides the mattress's profile. Many high-end mattresses are topped with a layer of Visco-Elastic memory foam. Manufacturers then create different mattress "feels" by inserting additional layers between the base layer and the layer of Visco-Elastic. For example, inserting an intermediate, "transition layer" of soft foam creates a soft feel or firmness; inserting an intermediate, "transition layer" of hard foam creates a harder feel or firmness.

53.     Tuft & Needle may think its two-layer, one-size-fits-all-mattress-feels mattresses are ideal, but that does not mean that Mattress Firm perpetuates a "scam" on its consumers by actually providing them with choices—choices that can be provided only by using multiple layers.

54.     Moreover, alleging that Mattress Firm is effecting a "scam" on consumers is not puffing or a meaningless superlative; it is a specific allegation of wrongful conduct.

        e.     The "Outdated Materials" Advertisement

55.     Tuft & Needle accuses Mattress Firm of using four "outdated materials" that it periodically rearranges "to charge you more money."

> ### Most mattress companies use the same four ingredients. But not us.
>
> Big Mattress thinks "Innovating" means "rearranging outdated materials to charge you more money." It's all these same 4 old layers, mixed and matched under different names so you can't compare and cross shop:

56.     Tuft & Needle also claims that the mattress industry "hadn't changed in years, aside from adding new sales tricks and gimmicks."

> ### T&N Adaptive® Foam. Innovation by us, perfected by you.
>
> The mattress industry hadn't changed in years, aside from adding new sales tricks and gimmicks. So when we started Tuft & Needle, we worked to innovate something entirely new for the industry. Unparalleled in comfort and support, our proprietary foam was painstakingly perfected through customer feedback. It's not memory foam. It's not latex. It's T&N Adaptive® Foam. And because it adapts to every individual's body, you'll always sleep on the ideal firmness for you.

57.     These statements are false and misleading.

58.     Consumers who rely on Tuft & Needle's advertising will believe that mattress manufacturers simply reshuffle the mattress layers, brand the resulting product something new, and claim that the mattress is innovative.  Contrary to Tuft & Needle's assertions, Mattress Firm

does not sell mattresses comprised of merely four outdated materials. "Innovation" does not mean simply rearranging outdated materials or applying different names to the same products. Preeminent chemists in the industry are continuously innovating materials to provide consumers with better mattresses. The industry has seen additional innovations in recent years: metals like copper and titanium graphite have been added to foams; phase change materials like wax that melts at different temperatures to create a cooling effect have been added to foams; and open-cell foam that moves heat away from the body efficiently is being developed. Each of these innovations is patented and improves the quality of mattresses in the industry. These are not new names applied to the same products; they are new, innovative products. Tuft & Needle's claims otherwise are false.

### G.   Tuft & Needle's False Media Statements

59.   Tuft & Needle has also made false statements to the media about Mattress Firm.

60.   For example, Tuft & Needle's leadership falsely compared Mattress Firm's return policy with its own in a recent interview:

> Park and Tim Hargis, vice president of business development and retail expansion for T&N, said Mattress Firm doesn't offer refunds as easily, and customers "go into a death spiral." When you buy a mattress, you have to exchange the product," said Hargis. "Whereas we offer legitimate refunds, you get trapped at Mattress Firm."[4]

61.   These statements are false. Far from a "death spiral" return policy that "trap[s]" consumers by allowing only product exchanges but not refunds, Mattress Firm's return policy, which is available on Mattress Firm's website, provides customers *120 days to either "exchange or return"* their mattress. Tuft & Needle's claims otherwise are false.

---

[4] *See* https://www.bizjournals.com/phoenix/news/2017/09/06/tuft-needle-is-betting-1m-that-its-product-is.html (last accessed on October 5, 2017).

### H.  The "Mattress Bet" Promotion

62.  While Tuft & Needle continued publicly to "warn" consumers not to shop at Mattress Firm because of its "unfair markups," "gimmicks," and "snake oil," privately Tuft & Needle's founders were pursuing a potential business relationship discussions with Mattress Firm. A meeting occurred in early August 2017, and Tuft & Needle's co-founders and chief financial officer traveled to another meeting in Houston on August 22, 2017.  Tuft & Needle advised during the meeting that although they sought to pursue a relationship between the two companies, they would be launching a "playful" new campaign in the coming days.

63.  Three days later, while Mattress Firm was developing aid and recovery programs for its employees and community in the midst of Hurricane Harvey, Tuft & Needle launched the "Mattress Bet" campaign.  It again pirated Mattress Firm's lettering and design scheme in the promotion, announced that it was "standing up to Goliath and raising the stakes in our battle against Mattress Firm," and accused Mattress Firm of "taking advantage" of its customers.  Ultimately, the purpose of the campaign was to dissuade consumers from engaging in the very activity Tuft & Needle was pursuing behind closed doors—namely, doing business with Mattress Firm:



64.    This "playful" campaign is just the latest example of Tuft & Needle diluting Mattress Firm's trademarks and disparaging its brand in the name of "honesty," when in actuality it is Tuft & Needle's business model that is built on deception.

### I.      The Effects of Tuft & Needle's Unlawful Activities

65.     There is no question that the sole purpose of Tuft & Needle's pervasive scheme to bait customers with Mattress Firm's name and then redirect them to false advertising is to deceive consumers in the marketplace and unfairly influence their purchasing decisions.  As a direct and proximate result of Tuft & Needle's actions, Mattress Firm is suffering irreparable injury for which there is no adequate remedy at law, and absent injunctive relief, will continue to suffer irreparable injury for which there is no adequate remedy at law.

66.     On information and belief, Tuft & Needle has derived certain direct and indirect benefits and profits from its unlawful advertising, all at Mattress Firm's economic and reputational expense.  Tuft & Needle's actions have caused and will continue to cause Mattress Firm to suffer damages, including but not limited to lost sales, lost profits, and damaged reputation and goodwill.

67.     On information and belief, Tuft & Needle's acts have been willful, wanton, malicious, intentional, and purposeful or in reckless disregard of, or with callous indifference to, Mattress Firm's rights.

68.     Tuft & Needle's acts have occurred in interstate commerce and in a manner affecting interstate commerce.

69.     Tuft & Needle's activities have damaged Mattress Firm in an amount that is not yet determined.

## CAUSES OF ACTION

### A.    Lanham Act—False Advertising, 15 U.S.C. § 1125(a)(1)(B)

70.    Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.

71.    As stated above, Tuft & Needle has made false or misleading statements of facts about its products; the statements actually deceived or had the capacity to deceive a substantial segment of potential customers, including consumers who sought to acquire Mattress Firm's products; the deceptions are material in that they are likely to influence consumers' purchasing decisions; and the statements entered interstate commerce by way of advertising to and otherwise communicating with potential customers located in multiple states and across state lines, including but not limited to by publishing its statements on the internet.

72.    Tuft & Needle's misrepresentations are done in direct comparison to competitors such as Mattress Firm and are purposely designed to inflict reputational and economic harms on Mattress Firm by attempting to falsely promote its products at the expense of Mattress Firm's products and brands.

73.    Mattress Firm has been and likely will continue to be injured as a result of Tuft & Needle's unlawful and misrepresented statement of facts.  Pursuant to 15 U.S.C. § 1117(a), Mattress Firm seeks a recovery of Tuft & Needle's profits, as well as all costs of this action, including its reasonable and necessary attorneys' fees.  Should the Court determine that the amount of the recovery of Tuft & Needle's profits is inadequate to compensate Mattress Firm for Tuft & Needle's actions, the Court should enter judgment for such sum as the Court finds to be just, according to the circumstances of this case.

**B.      Lanham Act—Federal Trademark Dilution, 15 U.S.C. § 1125(c)**

74.      Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.

75.      Mattress Firm's MATTRESS FIRM ® trademark is and has become famous by virtue of, among other things, its strong brand recognition, extent of use, extent of advertising, publicity, and nationwide usage.

76.      Tuft & Needle's foregoing willful and bad faith acts dilute, tarnish, and blur, and are likely to and will continue to dilute, tarnish, and blur the inherently distinctive qualities of the MATTRESS FIRM® trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Tuft & Needle's acts discussed above all took place after the MATTRESS FIRM ® trademark became famous, and (a) blur and impair the mark's ability to act as a distinctive identifier of source or origin, (b) tarnish the MATTRESS FIRM® trademark and harm its reputation, and (c) circumvent Mattress Firm's efforts to maintain the integrity of the products with which these trademarks are associated.

**C.      Texas Business & Commerce Code § 16.103—Trademark Dilution**

77.      Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.

78.      Mattress Firm's MATTRESS FIRM ® trademarks are and have become famous and widely recognized by the public throughout the state of Texas by virtue of, among other things, strong brand recognition, extent of use, extent of advertising, publicity, and nationwide and statewide usage.

79.      Tuft and Needle's false and unauthorized imitation of Mattress Firm's MATTRESS FIRM ® trademarks, which on information and belief has been willful, dilutes, and is likely to dilute the distinctive quality of Mattress Firm's MATTRESS FIRM® trademarks, by eroding the public's

exclusive identification of the marks with Mattress Firm, tarnishing the positive associations of these marks, and lessening the capacity of these marks to identify and distinguish Mattress Firm's goods.

### D.     Defamation

80.     Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.

81.     By knowingly, maliciously, or negligently publishing false and disparaging statements concerning Mattress Firm to the public through its advertising, Tuft & Needle has defamed Mattress Firm.

82.     Tuft & Needle's actions constitute defamation *per se*.  Specifically, Tuft & Needle's false statements, including but not limited to its false allegation that Mattress Firm—a well-known and respected mattress retailer in good standing under the law—has effectuated a scam on its customers, prejudice Mattress Firm in its trade or business, and is a false allegation that Mattress Firm has committed unlawful acts or has engaged in unlawful activity.

83.     But even if Tuft & Needle's statements were not defamatory *per se*, they are defamatory because they injure Mattress Firm's reputation by subjecting it to contempt, ridicule, and scorn within the community.

84.     As a direct and proximate result of Tuft & Needle's actions, Mattress Firm has suffered both general and special damages, including but not limited to reputational damage and lost profits from lost sales.  Because Tuft & Needle's statements were reckless, malicious, and made in bad faith, Mattress Firm also seeks exemplary damages to the maximum extent allowed by Texas law.

**E.      Business Disparagement**

85.      Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.

86.      By knowingly and maliciously publishing false and disparaging statements concerning Mattress Firm's economic interests to the public through its advertising, Tuft & Needle has disparaged Mattress Firm's business.  Tuft & Needle's actions therefore constitute business disparagement.

87.      Specifically, Tuft & Needle's false statements include but are not limited to its false statement that Mattress Firm—a well-known and respected mattress retailer in good standing under the law—has effectuated a scam on its customers; that Mattress Firm uses tricks, gimmicks, and snake oil to sell its products at unfair prices; and that Mattress Firm's products simply recycle and rearrange the same four outdated materials to charge its customers more money.  These statements prejudice Mattress Firm in its trade or business, and are false allegations that Mattress Firm has committed unlawful acts or has engaged in unlawful activity.

88.      Tuft & Needle's disparaging comments were communicated without privilege or justification. As a direct and proximate result of the Tuft & Needle's actions, Mattress Firm has suffered special damages, including but not limited to lost profits from lost sales.  Because Tuft & Needle's statements were reckless, malicious, and made in bad faith, Mattress Firm also seeks exemplary damages to the maximum extent allowed by Texas law.

**F.      Texas Common Law Unfair Competition**

89.      Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.  Mattress Firm seeks any and all damages due to Tuft & Needle's unfair competition.

90.     Unfair competition under Texas law "is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000).   Tuft & Needle has committed various illegal acts, including its false advertising and business disparagement, which has interfered with Mattress Firm's ability to conduct its business. This interference has caused Mattress Firm damages and provided Tuft & Needle with undeserved benefits for which Mattress Firm is entitled a recovery.

## ATTORNEYS' FEES

91.     Mattress Firm is entitled to recover reasonable and necessary attorneys' fees that are equitable and just under 15 U.S.C. § 1117(a).

## DAMAGES

92.     By reason of Tuft & Needle's actions, Mattress Firm has suffered, and will continue to suffer, damages to its business, reputation, and goodwill, and has lost sales and profits that it would have made but for Tuft & Needle's acts.   Mattress Firm therefore requests that the Court, under 15 U.S.C. § 1117(a), award as damages to Mattress Firm (1) Tuft & Needle's profits, (2) the amount of all damages sustained by Mattress Firm, and (3) the costs of this action.   Mattress Firm further requests that the Court award Mattress Firm any sum not exceeding three times the amount above the amount of actual damages, or  any higher amount as the Court may award in its discretion according to the circumstances of this case.

## REQUEST FOR A PERMANENT INJUNCTION

93.     Mattress Firm incorporates and repeats by reference each of the allegations contained in the paragraphs above.

94.     Mattress Firm further requests that the Court enter an injunction preventing the false, unfair, dilutive, and disparaging advertising practices of Tuft & Needle under 15 U.S.C. §

1116.  Injunctive relief is necessary to prevent irreparable harm to Mattress Firm and to preserve this Court's ability to award meaningful relief to Mattress Firm for Tuft & Needle's wrongful conduct.

95.     Specifically, Mattress Firm seeks an order enjoining Tuft & Needle from engaging in the following conduct:

- Running advertisements using any name or mark that dilutes the famous MATTRESS FIRM® trademarks;

- Running advertisements or claiming that multi-layer mattresses are a "scam";

- Running advertisements or claiming that the typical price of a comparable queen-sized mattress is $3,000 or anything other than the average price of a comparable queen-sized mattress;

- Running advertisements or claiming that the typical price of a comparable twin-sized mattress is $1,000 or anything other than the average price of a comparable twin-sized mattress;

- Running advertisements or claiming that Mattress Firm sells its products using "snake oil," or implying as much through the use of "Big Mattress," "Mattress Goliath," or similar references;

- Running advertisements or claiming that Mattress Firm thinks that "'innovating' means rearranging outdated materials to charge you more money," or implying as much through the use of "Big Mattress," "Mattress Goliath," or similar references; and

- Running advertisements or claiming that Mattress Firm's return policy is a "death spiral" that allows product exchanges but not refunds or that consumers get "trapped" at Mattress Firm," or implying as much through the use of "Big Mattress," "Mattress Goliath," or similar references.

96.     Mattress Firm further seeks an order requiring Tuft & Needle to disseminate corrective advertising to its customers that corrects the false statements identified in this complaint.

## JURY DEMAND

Mattress Firm requests a trial by jury.

## PRAYER

 Mattress Firm prays for the following relief:

a. An order permanently enjoining Tuft & Needle from using false statements of fact in any of its advertising;

b. Actual damages as proven at trial, including but not limited to Tuft & Needle's profits, or any other amount as requested above;

c. Treble, exemplary, and additional damages;

d. Prejudgment and post-judgment interest as allowed by law;

e. Attorneys' fees;

f. Costs of court; and

g. Such other and further relief to which Mattress Firm is entitled in the discretion of the Court.

Dated: October 16, 2017

Respectfully submitted,

_/s/ Melanie B. Rother_

    Melanie B. Rother
    State Bar No. 24041826
    melanie.rother@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246

Counsel for Mattress Firm, Inc.

OF COUNSEL
NORTON ROSE FULBRIGHT US LLP
Peter C. Tipps
State Bar No. 24070748
peter.tipps@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246